

**ILLINOIS DEPARTMENT OF**
# Human Rights

Rod R. Blagojevich, Governor
Rocco J. Claps, Director

February 22, 2007

PH **08 C 871**

**JUDGE LINDBERG**
**MAGISTRATE JUDGE KEYS**

Trisha Howell Devenport
1343 North Ashland, Apt. #2
Chicago, IL 60622

Katie J. Stotler, Esq.
Barnes & Thornberg, LLP
11 South Meridian Street
Indianapolis, IN 46204

RE: <u>Trisha Howell Devenport vs. Sam's Club, 2006CF0720</u>

## NOTICE OF SUBSTANTIAL EVIDENCE

The Director of the Department of Human Rights ("Department") has reviewed the investigation report in the above-referenced matter and determined there is substantial evidence that a civil rights violation has been committed.

The Illinois Human Rights Act ("Act") mandates that the Department conduct conciliation to give the parties an opportunity to settle the case before a complaint is filed with the Human Rights Commission ("Commission").

I have been designated by the Director to CONCILIATE this case. Conciliation is a process in which a Department Staff Attorney facilitates settlement discussions with both parties via telephone.

The Department also offers mediation, which is a form of conciliation. Mediation is a private, informal dispute resolution process in which a neutral third person, the mediator, meets with the parties to help reach an agreement.

All settlement efforts are confidential. If it is determined there is not a reasonable possibility of settlement, I will prepare a complaint against Respondent, file it with the Commission and serve notice of such filing on all parties, pursuant to Section 7A-102(F) of the Act. It is then the parties' responsibility to go forward with the case at the Commission. However, if Complainant rejects an offer which the Department determines will eliminate the effects of the violations charged and prevent their repetition, the Department will dismiss the charge, pursuant to Section 7A-103(D) of the Act.

**IT IS THE RESPONSIBILITY OF THE PARTIES TO INITIATE DISCUSSIONS IMMEDIATELY AFTER RECEIPT OF THIS NOTICE. THEREFORE, PLEASE REVIEW THE ENCLOSED INFORMATION AND CONTACT ME NO LATER THAN 5 DAYS AFTER RECEIPT OF THIS NOTICE IF YOU WISH TO CONCILIATE THIS MATTER. OTHERWISE, I SHALL FILE A COMPLAINT WITH THE COMMISSION.**

Amalia Martinez
Staff Attorney
(312) 814-6252

"B"

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
## INVESTIGATION REPORT

**Complainant:** Trisha Howell Devenport          **IDHR No.:** 2006CF0720
**Respondent:** Sam's Club                        **EEOC No.:** 21BA53221

**Investigator** <u>Nancy Stiles</u>   **Supervisor** <u>Sofia N. Rivera</u>   **Date** 1·25·07

**Issue/Basis:**                                  **Finding:**

A. Suspension/sex, female                         A. Substantial evidence

B. Discharge/sex, female                          B. Substantial evidence

**Jurisdiction:**

Alleged violation(s):              A:   April 2, 2005
                                   B:   April 7, 2005
Charge filed:                           September 27, 2005
Charge Perfected:                       September 27, 2005
Amendments:                             None
Number of employees:                    258

**Verified Response**
Date due: December 4, 2005
Date received or postmarked: December 1, 2005
Timely: __X__  Untimely: ____
If untimely, good cause shown: Yes ___ No ___

**Employment Data:**

Respondent's EEO report (Exhibit A) indicates that Respondent employs 258 individuals at Complainant's location, of whom 13 are managers and of those, five (39%) are female.

**Uncontested Facts:**

1. Respondent is a store.
2. Complainant was hired on June 26, 1986.
3. Complainant was suspended on April 2, 2005, for an alleged act of gross misconduct.
4. Complainant was discharged on April 7, 2005, for an alleged act of gross misconduct.


"B"

Charge No. 2006CF0720
Page 2

## INVESTIGATION SUMMARY

### Complainant's Allegations A and B

Complainant alleges that she was suspended on April 2, 2005, and subsequently discharged due to her sex, female. Complainant contends that Larry Dodson (male), Director of Operations, told Complainant that she was suspended for an alleged act of gross misconduct and was later discharged. Complainant denies that she engaged in gross misconduct and alleges that similarly situated male managers, Frank Reich, Wayne Brock, Milton Lynch, and Bob Johnson, have been cited for gross misconduct, and have not been suspended or discharged.

### Respondent's Defenses A&B

Respondent denies that Complainant was suspended and subsequently discharged because of her sex, female. Respondent contends that Complainant was suspended with pay and later discharged based on allegations of gross misconduct when she submitted credit applications for co-workers without their permission.

### Factual Findings

1. Juan Anzar[1] (male), Field Investigator, stated that Complainant was alleged to have entered credit applications for co-workers who had not signed a credit application. Anzar stated that prior to Complainant going on maternity leave on November 12, 2004, Complainant was seen by other co-workers entering applications of co-workers into Respondent's system for credit. Anzar stated that the individuals whose names were entered did not request their names to be applied to the in-store credit applications. Anzar stated that his investigation relied on witness testimony as Respondent could not retrieve data of who entered the credit applications or when the credit applications were entered into Respondent's system. Anzar stated that Skenandore actually saw Complainant select the submit key for acceptance of the actual credit card applications.

2. Exhibit L is witness testimony of Priscilla Skenandore (female), Business Renewal Coordinator, with Juan Anzar dated March 28, 2005, which indicates that Complainant and Frank Reick (male), Manager, were talking in the Marketing Department and Complainant was on the computer. Skenandore indicates that Complainant told her that Complainant was "checking to see who has credit" and "signing them up". Skenandore indicated that signatures are needed in order to process credit applications. Skenandore indicated that she called Paula Rich (female), Team Leader, and then talked to Wayne Brock (male), General Manager, about the situation.

3. Exhibit M is witness testimony of Frank Reick (male), Manager, with Juan Anzar, which indicates that he was in the Marketing Office with Complainant on November 12, 2004. Reick indicated that Complainant was pulling up associates' social security numbers from Respondent's system and informing Reick that he could enter an associate's name for credit toward Respondent's world-series goal for the most credit applications. Reick indicated that an associate by the name of Kari Aguilar (female) complained to him about why she received a letter that she applied for

---

[1] Juan Anzar was interviewed on July 19, 2006. Staff attempted to re-interview Mr. Anzar for additional detail on December 6, 2006, however Respondent failed to make him available.

Charge No. 2006CF0720
Page 3

credit when she did not. Reick indicated that he contacted GE Capital and had her credit application reversed.

4. Exhibit N is witness testimony from Paula Rich (female), Team Leader, dated March 28, 2005, which indicates that she received a phone call from Priscilla Skenandore (female), Business Renewal Coordinator, who told her she saw Complainant applying for credit for associates without their knowledge. Rich indicated that on the following day, she met with Wayne Brock (male), General Manager, who informed her that Kari Aguilar (female), and Cindy Barr (female), had both complained of someone entering their names for credit. Rich indicated that she pulled an archive from Respondent's system for November 12, 2004, to find out when associates applied for credit. Rich indicated that she found that Kari Aguilar, Anna Donato, Joan DeChristopher, Cindy Barr, Kathy Dalton, Nicole Baruch, Sharon Adleman, and Ignacio DelGado, had all been signed up for credit during that time.

5. Exhibit O is witness testimony from Nicole Baruch (female), Associate, dated March 30, 2005, which indicates that someone at Respondent signed her up for credit without her permission.

6. Exhibit P is witness testimony from Cindy Barr (female), Associate, dated April 2, 2005, which indicates that she did not submit her name for any credit application.

7. Exhibit Q is witness testimony from Anna Donato (female), Associate, dated March 30, 2005, which indicates that on November 12, 2004, someone applied for credit for her without her consent.

8. Exhibit R is witness testimony from Kari Aguilar (female) Associate, dated March 30, 2005, which indicates that she did not give Complainant or anyone else permission to sign her up for credit.

9. Exhibit S is witness testimony from Joan DeChristopher (female), Associate, dated April 2, 2005, which indicates that she did not give anyone permission to submit her name for credit.

10. Exhibit T is 6 pages from Juan Anzar (male), Field Investigator, investigation and interview with Complainant, dated April 7, 2005, which indicates that Complainant told Anzar that there was an audit that day and she briefly met with Frank Reick (male), the new Business Coach. Complainant indicated that she showed Frank Reick the productivity sheet that she looked up associates' names to look at their credit, and how to sign up new associates. Complainant indicated that Paul Rich informed her that she could sign up associates for credit every two months if they did not receive credit. Complainant indicated that she has never signed an associate up for credit without an application, but she did pull up names on Respondent's system and look at their credit status.

11. Exhibit U is 2 pages of Complainant's account of her last day of work before going on maternity leave, dated April 4, 2005, which indicates that Complainant was scheduled from 8:00am to 6:00pm on November 12, 2004. Complainant indicated that she spent most of the day with Colleen Vukovich from headquarters who was doing an audit. Complainant indicated that she went to lunch with Juan Anzar and then met back with Vukovich and then went to the marketing

Charge No. 2006CF0720
Page 4

office where co-workers gave her gifts for her arriving baby and then met back with Vukovich again until she left for the day.[2]

12. Exhibit B is Anzar's e-mail to Larry Dodson (male), Marketing Manager, dated April 4, 2005, which indicates that Complainant confirmed that she entered credit applications for associates who were denied earlier.

13. Pricilla Skenandore (female), Business Renewal Coordinator, stated that she witnessed Complainant keying in the individuals' social security numbers, bringing up their names in the computer and pressing accept to receive a credit card. Skenandore stated that Complainant had a clipboard with individuals' social security numbers on it and she was accessing peoples' information on M-Track. Skenandore stated that Complainant was accepting pre-approvals without associates being present. Skenandore stated that she is in charge of whole credit world-series competition, which was a big project for her, so she was really concerned when she saw what Complainant was doing. Skenandore stated that Complainant told her that she was going to see who was qualified for credit and then she was going to sign them up. Skenandore stated that no one could sign anyone up for credit without his or her signature.

14. Paula Rich (female) Marketing Team Lead, stated that Skenandore called her and told her that she witnessed Complainant processing credit applications without associates' knowledge. Rich stated that she talked to Wayne Brock (male), General Manager, about credit applications. Rich stated that Brock knew about what Complainant had done because Cyndy Barr, Ana Donato and Kari Aguilar came to him complaining about their membership card not working. Rich stated that anyone used to be able to log in and then use a computer. Rich stated that she sat down with Juan Anzar (male), Regional Loss Prevention Investigator, and explained what happened. Larry Dodson (male), Marketing Director, and Rich worked on correcting the problem. Rich stated that she went through each associate's credit summary looking for the dates on signed applications. Rich stated that she found eight applications that were added without associates' permission.

15. Gregg Sprague (male), Vice President of Operations, stated that he recalls that Complainant called him about her discharge. Sprague stated that Complainant denied the accusations being made against her. Sprague stated that he does not recall having a conversation with Complainant about whether it was Complainant signing on or not. Sprague stated that he looked at witness statements as evidence that she did apply for associates credit applications. Sprague stated that he is not certain on how to retrieve information on who signed on during that time period.

16. Complainant stated that on November 12, 2004, she was scheduled from 8:00 am to 6:00 pm, but she left early around 5:00 pm. Complainant stated that she was working with Colleen Vukovich (female), former Project Manager, all day. Complainant stated that she did not submit credit applications without associates' approval. Complainant stated that she never admitted that she submitted credit applications without associates' approval.

17. Colleen Vukovich (female), former Project Manager, stated that she worked with Complainant all day on November 12, 2004. Vukovich stated that she was working with Complainant the whole day having meetings and conference calls. Vukovich stated that she was working with

---

[2] Respondent indicated that they did not interview Colleen Vukovich because Complainant did not notify Respondent that Vukovich would have any first hand knowledge of the allegation.

Charge No. 2006CF0720
Page 5

Complainant the whole day. Vukovich stated that after Complainant was discharged, Respondent looked at whose sign-on was used to apply for those credit applications, and they found out that it was not Complainant. Vukovich stated that Respondent found out that it was Paula Rich's sign-on, and the applications were processed under Rich's name. Vukovich stated that Respondent has to log into the system to see who processed applications. Vukovich stated that everyone has their own password, and no one is to walk away from a computer when they are signed on. Vukovich stated that Rich would have had to give her password to someone else in order for them to use it. Vukovich stated that she knew that the initials of PKR were the sign-on of Paula Rich. Vukovich stated that on April 6, 2006, Complainant asked her to look into three credit applications; Cindy Barr, Anna Donato, and Kari Aguilar. Vukovich stated that she retrieved info from Respondent's ISD Department, and found that those three credit applications were entered after Complainant left for the day on November 12, 2004. Vukovich stated that Cindy Barr's application was entered at 7:17 pm, Anna Donato's credit application was entered at 7:21 pm, and Kari Aguilar's credit application was entered at 7:24 pm. Vukovich stated that there was a world-series credit contest during the same time period. Vukovich stated that she and Complainant left work around 5:00 pm.

18. Vukovich stated that she was never contacted regarding Respondent's investigation.

19. Cece Mercado (female), Marketing Team Leader, stated that she believes that Paula Rich (female), Manager, committed credit fraud and was not discharged. Mercado stated that anyone can retrieve credit information from Respondent's system. Mercado stated that all one needs to do is enter a membership number or social security number into the account summary and it will display what time and when the membership credit application was entered. Mercado stated that Complainant was working mornings because she was working as a business coach. Mercado stated that Complainant was working from 8:00 am to 5:00 pm or 7:00 am to 4:00 pm. Mercado stated that she is not sure if Respondent discharged Complainant because of her sex, female.[3]

20. Tom Hyde (male), former Loss Prevention Investigator, witness for Complainant, working at another location, stated that Complainant informed him that she felt that she was being targeted because of her pregnancy. Hyde stated that he believes that anyone can go into the ISD Department and the computer system and bring up information on who processed credit applications.

21. Exhibit C is Respondent's coaching for improvement for Complainant, dated July 22, 2003, which indicates that Complainant received a written coaching for performance issues.

22. Exhibit D is Respondent's coaching for improvement for Milton Lynch (male), Manager, dated March 19, 2005, which indicates that Lynch received a coaching for misconduct in that he was accused of harassing seven female employees, with witness testimony.

23. Exhibit E is Respondent's coaching for improvement for Robert Johnson (male), Manager, dated March 25, 2005, which indicates that Johnson received a verbal coaching for poor performance.

---

[3] Respondent indicated that Paula Rich was never accused of credit card fraud.

Charge No. 2006CF0720
Page 6

24. Exhibit F is Respondent's coaching for improvement for Wayne Brock (male), Manager, dated January 18, 2005, which indicates that Brock received a written coaching for misconduct in that he received a motorcycle as a gift from a vendor.[4]

25. Exhibit G is 3 pages of Respondent's coaching for improvement policy, dated July 7, 2005, which indicates that coaching for improvement is progressive. Individuals who have committed gross misconduct, which includes intentional misuse of company time or theft, will be discharged immediately.[5]

26. Exhibit H is Respondent's EEO policy, dated January 1, 2005, which indicates that Respondent will not discriminate based on race, color, veteran status, marital status or any other legally-protected status.

27. Exhibit I is Complainant's exit interview, dated April 7, 2005, which indicates that Complainant was discharged for gross misconduct.

28. Exhibit J is a job data form for Sylena Smith (female), which indicates that Smith was discharged for gross misconduct on October 19, 2004.[6]

29. Exhibit K is a job data form for Tino Santiago (male), which indicates that Santiago was discharged for three days of unreported absences.

**Analysis**

The Department's investigation revealed that Respondent suspended and subsequently discharged Complainant for allegedly committing credit fraud by entering credit applications for employees who had not applied for credit. The investigation revealed that someone at Respondent committed credit fraud. Respondent contends that it is not able to retrieve information or documentation on the date, time, and sign-on information of the credit applications that were fraudulently entered. Witness testimony revealed that Respondent is able to retrieve information of date, time and sign-on information of the credit applications that were fraudulently entered. The investigation revealed that Respondent interviewed only witnesses who indicated that Complainant was observed entering credit applications and consequently Complainant was discharged. Milton Lynch, Complainant's named comparative, was cited for misconduct for allegedly harassing seven associates and was only issued a coaching. The investigation revealed that Wayne Brock was cited for misconduct when he accepted a motorcycle as a gift from a vendor and was only issued a coaching. Staff requested an interview with Juan Anzar, Field Investigator, to further clarify Respondent's investigation, however, he was not made available.

**Findings and Conclusion A and B**

A finding of **substantial evidence** finding is recommended because:

The Department's investigation indicates that Complainant alleges she was suspended and subsequently discharged due to her sex, female. The investigation showed that Complainant was suspended with pay

---

[4] Respondent indicated that Wayne Brock, Milton Lynch, Robert Johnson, and Frank Reich have no other discipline on file.
[5] Respondent indicated that it will exercise its discretion in determining the appropriate level of discipline.
[6] Respondent indicated that Smith was discharged for carrying a firearm.

Charge No. 2006CF0720
Page 7

pending an investigation of alleged credit fraud, and later discharged. Respondent denied that Complainant was suspended and discharged because of her sex, female. Respondent contends it has no documentation to show that Complainant was guilty of credit fraud, however, Respondent relied on their investigation and witness testimony. Witness testimony indicates that Respondent is able to access Respondent's computer system to find who signed on, when they signed on, and at what time the credit fraud took place; Respondent denies that it can retrieve such information. Complainant alleges that Respondent is more lenient with male managers. Evidence indicates that Complainant's comparative Milton Lynch (male), Manager, and Wayne Brock (male), Manager were cited for misconduct, which appears as gross misconduct; however, they were not suspended or discharged and Respondent failed to justify the leniency with male managers.. Therefore, staff recommends a substantial evidence finding.

**Witness Information**

1. Trisha Howell Devenport (ffc)
   1343 N. Ashland
   Apartment #2
   Chicago, IL 60622
   773-895-0814

2. Juan Anzar (male) (ffc)
   Field Investigator
   9500 W. Joliet Road
   Hodgkins, IL 60525
   602-388-2373

3. Larry Dodson (male) (ffc)
   Marketing Manager
   9500 W. Joliet Road
   Hodgkins, IL 60525
   708-387-7425

4. Pricilla Skenandore
   Business Renewal Coordinator
   (witness for Respondent, telephone interview)
   317-236-1313

5. Paula Rich
   Marketing Team Leader
   (witness for Respondent, telephone interview)
   317-236-1313

6. Gregg Sprague
   Vice President of Operations
   (witness for Respondent, telephone interview)
   317-236-1313

Charge No. 2006CF0720
Page 8

7. Colleen Vukovich
Former Project Manager
(witness for Complainant, telephone interview)
708-927-6115

8. Cece Mercado
Marketing Team Leader
(witness for Complainant, telephone interview)
317-236-1313

9. Tom Hyde
Former Loss Prevention Investigator
(witness for Complainant, telephone interview)

**Exhibits**

A. Respondent's EEO report.

B. Juan Anzar's e-mail to Larry Dodson.

C. Respondent's coaching for improvement for Complainant.

D. Respondent's coaching for improvement for Milton Lynch.

E. Respondent's coaching for improvement for Robert Johnson.

F. Respondent's coaching for improvement for Wayne Brock.

G. Respondent's coaching for improvement policy.

H. Respondent's EEO policy.

I. Complainant's exit interview.

J. Sylena Smith's job data form.

K. Tino Santiago's job data.

IR111B
8/2006