## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TRISHA HOWELL DEVENPORT, | ) |
| | ) |
| Plaintiff , | ) |
| v. | ) |
| | ) **Plaintiff Demands Trial By Jury** |
| SAM'S CLUB WEST and/or SAM'S CLUB | ) |
| | ) |
| Defendant | ) |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, TRISHA HOWELL DEVENPORT (hereinafter "Plaintiff" or "Devenport"), by and through her undersigned counsel of record, and complaining against Defendant, Sam's Club and/or Sam's Club West (hereinafter "Defendant" or "Sam's"), and in so doing states as follows:

## NATURE OF THE CASE

This is a case about shocking and offensive sexual discrimination.  In this  seven (7) Count Complaint, Plaintiff DEVENPORT seeks redress for Defendant's shocking and outrageous creation and perpetuation of a severe and pervasive gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII").  Devenport also seeks redress under The Pregnancy Discrimination Act of 1978, amendment to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e(k).  Further, Plaintiff brings a claim of violation, retaliation and interference with her rights under the Family Medical Leave Act (FMLA) 29 U.S.C. § 2601 et seq. and 5 U.S.C. § 6381 et seq.,, and the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. Jurisdiction of the Honorable Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, as well as this Court's power to assert ancillary and

pendant jurisdiction over related state law claims. Finally, Devenport seeks redress for Defendant's intentional infliction of emotional distress under Illinois common law for actions so extreme and outrageous they went beyond the bounds of decency and are to be regarded as intolerable in our society.

1.      Plaintiff fulfilled all conditions precedent to the institution of this action under Title VII, as amended by the Civil Rights Act of 1991 and the Pregnancy Discrimination Act of 1978, amendment to title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e(k)..

2.      Plaintiff filed a "Charge of Discrimination" with the Illinois Department of Human Rights (Hereinafter referred to as the "IDHR" on or about September 27, 2005.  *See Charge of Discrimination attached hereto as Exhibit "A").*

3.      The IDHR and Equal Employment Opportunity Commission (Hereinafter referred to as the "EEOC"), have a "cross filing agreement" which automatically files any and all Charges of Discrimination filed with one agency to be also filed with the other agency.

4.      Therefore the Plaintiff's Charge filed with the IDHR was also filed with the EEOC.

5.      The EEEOC issued a "Notice of Right to Sue" dated February 12, 2008.  *See Notice of Right to Sue, attached hereto as Exhibit "C"*

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981, as amended, and 28 U.S.C. §1331 and §1343. Further, jurisdiction is found based upon the Family Medical Leave Act

("FMLA") 29 U.S.C. § 2601 *et seq.* and 5 U.S.C. § 6381 *et seq.*,, Supplemental jurisdiction over Plaintiff's Illinois state law claim is conferred by 28 U.S.C, § 1367 (a).

7.    Venue is proper in this judicial district under 28 U.S.C. §1391(b) and (c) because the Plaintiff and Defendants either reside in this judicial district and/or because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## PARTIES

8.    Plaintiff TRISHA HOWELL DEVENPORT is a female that resides in the state of Indiana but works and regularly does business in Cook County, Illinois, within the Northern District of Illinois.

9.    Further, almost all of the factual events, witnesses and physical location of the events are located in the State of Illinois.

10.   Defendant SAM'S CLUB, INC., and/or SAM"S CLUB WEST is a corporation with retail locations in Cook County, Illinois.

## STATEMENT OF FACTS

### FACTS REGARDING THE INVESTIGATION AND DETERMINATIONS OF THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS

11.   Based upon the Plaintiff's Charge of Discrimination (Hereinafter referred to as a "Charge" or "COD") the IDHR conducted a complete investigation of the claims of the Plaintiff.

12.   At the end of the investigation, the IDHR issued a "Finding of Substantial Evidence" (Hereinafter referred to as "Substantial Evidence Finding") (Notice of Substantial

Evidence and Investigation Report including Finding of Substantial Evidence attached to this complaint as Exhibit "B").

13.    Based upon the Substantial Evidence Finding, and after the failure to settle the case at Conciliation, the IDHR filed a Complaint with the Illinois Human Rights Commission (Hereinafter referred to as HRC).

14.    The case filed before the HRC was identified by Case Number 2006 CF 0720 .

15.    The HRC case has progressed through some initial written discovery.

16.    It is the standard procedural practice of the HRC to "Stay" its proceeding while a Federal District Court suit is progressing.

17.    It is expected that the HRC will stay the proceedings pending the determination of this court action.

**FACTS UPON WHICH THE
FMLA CLAIMS ARE BASED**

**<u>2005-2006 FMLA VIOLATIONS AND FACTS</u>**

18.    At all times relevant hereto, Defendant  was an employer engaged in an industry affecting commerce, and had 50 or more employees for each working day in each of twenty or more calendar weeks. At all relevant times herein Defendant has been a covered entity under the FMLA pursuant to 29 U.S.C. § 2601, *et seq.*

19.    At all times material hereto, Plaintiff was an employee of Sam's as that term is defined pursuant to 29 U.S.C. § 2611(2).

20.    Plaintiff was hired by Defendants in June 23, 1986 as a part-time casher at the age of nineteen (19) years in Waco, Texas.

21.    Plaintiff worked for the Defendant from 1986 till her unlawful demotion, transfer on February 12, 2005, suspension on April 2, 2005 and termination on April 8, 2005.

22.    Plaintiff was an exceptional employee, as demonstrated by her 19 years of dedicated service to the Defendant.

23.    Further the Plaintiff's exceptional work is demonstrated by her advancement through the ranks to a General Manager position

24.    On October 25, 2004, Plaintiff returned a fully completed Family and Medical Leave of Absence Approval Form to Defendant.

25.    On November 12, 2004 the Plaintiff began a medical leave of absence due her being pregnant and the impending birth of her second child.

26.    The leave form indicated a return leave date of February 15, 2005.

27.    On February 12, 2005 the Plaintiff returned to her employment with Defendant, after her FMLA leave.

28.    On February 12, 2005 the Plaintiff was demoted, transferred and otherwise reduced in pay and benefits and/or not returned to her original position or a substantially similar position in direct violation of her rights under FMLA.

29.    On April 2, 2005, Plaintiff was suspended from work and placed on paid leave.

30.    Defendant suspended the Plaintiff and falsely accused of submitting credit applications for employees without the employees authorization.

31.    Plaintiff was accused of doing this on November 12, 2004 the last day of work before the beginning of her FMLA leave.

32.    On April 8, 2005 Defendant fired the Plaintiff based on the false accusation.

33.     Defendant's actions were willful and deliberate and therefore allow the Plaintiff to bring this action within three (3) years of the adverse action of the Defendant in accordance with the provisions of the FMLA.

## SAM'S PRIOR RETALIATIONS, DEMOTIONS AND INTERFERENCE FOR PLAINTIFF'S PRIOR FMLA LEAVE

34.     In 2002 the Plaintiff became pregnant with her first child and in July applied for and was approved for a twelve (12) week FMLA leave.

35.     Plaintiff went on FMLA leave from Sam's Club and had an initial return to work date of 11/1/02.

36.     After the birth of her child, but before the end of her FMLA leave, (on or about 10/13/2002) Plaintiff's mother was admitted to an Ohio hospital for chest pain

37.     Plaintiff was with her mother and wished to remain there to assist in her care.

38.     Plaintiff communicated or attempted to communicate this event to Defendants on several occasions.

39.     Plaintiff received permission of Defendant to utilize vacation time to extend her leave beyond the 12 weeks and/or to continue her FMLA leave.

40.     On 10/24/2002 in a teleconference Defendant attempted to induce Plaintiff to return from her leave early even before the end of her FMLA leave return date of 11/1/2002.

41.     On 10/25/2002 Defendant transferred the Plaintiff while she was on FMLA leave but promised that the transfer would not affect her salary or other benefits.

42.     On 11/2/2002  Defendant demoted Plaintiff the day Plaintiff returned from FMLA leave.

43.    On 7/26/2003 ande/or 9/6/2003 Defendant gave the Plaintiff a written coaching and/or changed her pay to Co-Manager pay and thereby reducing her pay, due to her leave and breaching the oral and/or written contract that the transfer would not reduce her pay.

44.    Defendant  and Plaintiff orally and in writing agreed to allow her to have  time off, consideration passed in the form of pay and work for pay, both parties benefited from the contract, then the Defendant  breached the contract by first transferring her, demoting her, then six months later disciplining her and reducing her pay.

45.    While this demotion and other adverse actions are not actionable in this complain under FMLA and the FMLA statute of limitations clearly applies, the actions clearly demonstrate a pattern and practice of animus towards the Plaintiff based on her use of FMLA, approved vacation leave and/or her pregnancy/sex, however the claims are brought under Illinois State written contract law, which has a ten year statute of limitations.


**FACTS UPON WHICH**
**THE SEX AND PREGNANCY CLAIMS ARE BASED**


46.    Defendant is engaged in an industry affecting commerce and employ more than 15 employees and is an employer's within the meaning of Sections 701(b) and (h) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, et seqsdf

47.    Plaintiff was an employee of Defendant pursuant to Title VII from 1986 through April 8, 2005.

48.    Defendant is an employer as defined by Title VII.

49.    On April 8, 2005, Plaintiff was unlawfully terminated from her employment with Defendants.

50.     At all relevant times, Plaintiff performed her job responsibilities in a manner that met and/or exceeded Defendant's legitimate expectations.

51.     On a continuing, ongoing and escalating basis from throughout her employment until the date of her unlawful termination, Plaintiff Devenport was subjected to discrimination because of her gender and or pregnancy.

52.     Defendant's Manager Larry Dodson subjected Plaintiff to gender and/or pregnancy discrimination.

53.     Defendant terminated Plaintiff based on a claim of "Gross Misconduct", but Defendant did not terminate similarly situated male employees that also engaged in behavior which should have been considered "Gross Misconduct" or were considered "Gross Misconduct".

54.     The Defendant falsely accused Plaintiff of gross misconduct based on the submission of unauthorized credit applications, however, Plaintiff did not engage in this illegal behavior and vehemently denies any involvement or knowledge of the unauthorized credit applications.

55.     Rather, Plaintiff alleges that the Defendant falsely accused the Plaintiff of this act as a pretext to cover its discriminatory intent.

56.     Additionally, Defendant treated male employees differently by either not investigating, or not treating rule violations of male employees as harshly as female employees such as Plaintiff.

57.     This dissimilar treatment is demonstrated by the following examples, some of which were included in the IDHR report leading to the Substantial Evidence Finding, as follows:

a.  Defendant claimed to be unable to retrieve data from the computer in question, while witness testimony indicated retrieval of this information was possible;

b.  Defendant's "investigation" of the credit applications did not include interviews with vital witnesses who clearly had important and relevant information;

   i.  The Plaintiff spent the majority of November 12, 2005, the last day before her FMLA leave, with Colleen Vukovich. Ms. Vukovich was at the Plaintiff's retail location on November 12, 2005, conducting an audit of the store, however, Defendant admits that it failed to interview Ms. Vukovich.

c.  Milton Lynch (male), Plaintiff's named comparative, was accused of sexual harassment by seven (7) female associates and received a "coaching"; a comparative "slap on the wrist";

d.  Wayne Brock (male), another comparative, was accused and admitted that he accepted a motorcycle as a gift from a vendor and also was only issued a "coaching", another mild punishment for a serious breach of Defendant's rules.

   i.  The IDHR report states "Evidence indicates that Complainant's comparative Milton Lynch (male), Manager, and Wayne Brock (male), Manager were cited for misconduct, which appears as gross misconduct; however, they were not suspended or discharged and Respondent failed to justify the leniency with male managers..

Therefore, staff recommends a substantial evidence finding." (See Ex. C page 7).

e.  The evidence of pregnancy discrimination and sex discrimination are also established by the pattern of prior actions of the Defendant:

    i.  In 2002 the Plaintiff returned from her first pregnancy leave and was demoted and transferred the very same day.

    ii.  In 2005 Plaintiff transferred out of Larry Dodson's area of responsibility and supervision in an effort to avoid his discriminatory actions.

    iii.  And prior to February 15, 2005 Larry Dodson chose to "reassign" his area of responsibility to include the Plaintiff's retail store in an effort to ensure the Plaintiff's termination.

    iv.  The Defendant animus towards females, pregnant females and/or FMLA is also demonstrated by the Plaintiff's "career path" before and after pregnancy;

        1.  From 1986 to 2000 the Plaintiff received a number of promotions from "Field Hourly" to Assistant Manager to Assistant Manager Merchandise to Sam's Co-Manager to finally Manager.

        2.  The Plaintiff then had a child and took FMLA leave, immediately after the Plaintiff's career was knocked "off-track" as she was demoted twice from Manger to Co-Manager to Assistant Merchandise Manager 2.

3. Then Plaintiff had a second child and took a second FMLA leave and was again moved to a lesser position upon return, suspended and terminated after a biased "investigation" of false claims overseen by the district manager, Larry Dodson, who sought to re-acquire supervision over the Plaintiff's retail location.

58. The unwelcome gender discrimination and pregnancy discrimination affected the terms, conditions and responsibilities of Plaintiff's employment with Defendant.

59. Plaintiff reported the various acts of pregnancy discrimination, gender discrimination suffered by her managers to those in authority at Defendants and/or Defendants had knowledge of the allegations herein.

60. Defendants took no action to remedy, alleviate, or otherwise address the discrimination.

61. Defendant's actions were so outrageous, obscene, and degrading that it would offend and humiliate any reasonable individual.

62. The working environment was so ridden with discrimination, sexual harassment and so sexually hostile that it reasonably interfered with Plaintiff's ability to perform her job responsibilities.

63. At all times relevant herein, Plaintiff was performing all of her job duties/responsibilities in an outstanding manner and there was no legitimate non-discriminatory reason for the discriminatory and harassing treatment alleged herein.

64.    Defendants knowingly engaged in conduct intended to harass, humiliate, and degrade Plaintiff with intentional malice and knowledge that it was violating federal and state laws prohibiting said conduct.

65.    Plaintiff was a dedicated, hardworking and loyal employee that contributed to Defendant's business in a substantial and meaningful manner.

66.    Defendant's illegal actions as alleged herein have caused severe and egregious injury and damage to Plaintiff.

67.    Defendants contributed to, ratified, condoned, accepted, and failed to remedy or remediate the gender/pregnancy discrimination.

68.    Defendant knew and/or should have known of the gender/pregnancy discrimination and refused and failed to take action to terminate or correct the gender/pregnancy discrimination, although having the power and authority to do so.

69.    On April 8, 2005, Defendants terminated Plaintiff because of her gender, because she was pregnant.

70.    Defendants have a policy and custom of allowing and condoning gender/pregnancy discrimination, and failing to effectively respond to complaints/reports thereof and/or take action to terminate, correct, remediate or otherwise eliminate such actions and environment despite affirmative knowledge of such actions and environment.

71.    The actions of Defendants in intentionally engaging in and condoning gender/pregnancy discrimination, against Plaintiff has caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

72.    The Plaintiff's allegations regarding her prior pregnancy also support a anti-pregnancy animus.

73.    All allegations herein are plead in the alternative to the extent necessitated for viable construction under applicable state and/or federal law.

74.    All allegations herein are plead based upon personal knowledge and experience, those facts not personally known are plead based upon belief and information.


### FIRST CLAIM FOR RELIEF
### VIOLATIONS OF TITLE VII
### DISCRIMINATION BASED UPON SEX

75.    Plaintiff incorporates and realleges all paragraphs contained in this complaint as if fully set forth herein.

76.    At all times relevant to this cause of action, Plaintiff was a "person" and "employee" of Defendants, and Defendants were her "employer" covered by and within the meaning of Title VII.

77.    At all times relevant to this cause of action, Larry Dodson was an agent of Defendants, covered by and within the meaning of Title VII.

78.    The actions of Defendants as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they likely have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff because of her sex, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e), et seq.

79.    At all times relevant to this cause of action, Defendants had a duty under Title VII to refrain from discriminating against Plaintiff based on her gender.

80.     Defendant had a duty under Title VII to prevent the ongoing severe and pervasive sexually hostile work environment.

81.     Plaintiff reported and/or Defendants had knowledge of the gender discrimination, sexual harassment and severe and pervasive sexually hostile work environment.

82.     Despite knowledge of the gender discrimination and despite repeated reports and complaints by Plaintiff, Defendant refused to take any action to investigate, remediate, stop, prevent, or otherwise address the ongoing discrimination and harassment.

83.     Defendants intentionally subjected Plaintiff to unequal and discriminatory treatment.

84.     The discriminatory actions by Defendants, through their management agents and employees, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws, state laws, and the rights and sensibilities of Plaintiff.

85.     Defendants, by and through their agents and employees, engaged in the foregoing acts and conduct when they knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

86.     The actions of Defendants in intentionally engaging in and condoning sexual discrimination against Plaintiff has caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.


## PRAYERS FOR RELIEF FOR THE FIRST CLAIM OF RELIEF


**WHEREFORE**, Plaintiff respectfully prays for the following relief:

a.     All wages and benefits Plaintiff would have received but for the

discrimination, including pre-judgment interest;

b.    Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the depression, humiliation, anguish, and emotional distress, caused by Defendant's conduct;

c.    Defendants be required to pay prejudgment interest to Plaintiff on these damages;

d.    A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

e.    A permanent injunction requiring Defendants to adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000e et seq.;

f.    The Court to retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

g.    Punitive damages as a result of Defendant's deliberate, intentional, willful, wanton and malicious conduct;

h.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

i.    Such other relief as the Court may deem just or equitable.

## SECOND CLAIM FOR RELIEF

**(VIOLATIONS OF THE PREGNANCY DISCRIMINATION ACT OF 1978, AMENDMENT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.A. § 2000E(K))**

87.    Plaintiff incorporates and realleges all paragraphs contained within this Complaint as if fully set forth herein.

88.    The Pregnancy Discrimination Act of 1978, amendment to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e(k) prohibits discrimination on the basis of pregnancy. The Pregnancy Discrimination Act, 42 U.S.C.A. §2000e(k) includes the following:

a.    The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title [42 USC § 2000e-2(h)] shall be interpreted to permit otherwise.  This subsection shall not require an employer to pay for health insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion: *provided*, That nothing herein shall preclude an employer from providing abortion benefits or otherwise affect bargaining agreements in regard to abortion.

89.    42 U.S.C.A. §2000e-2 provides:

**§ 2000e-2.  Unlawful employment practices.**

(a)    Employer practices.  It shall be an unlawful employment practice for an employer:

(1)      to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2)      to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

(b)      Employment agency practices.  It shall be unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin.

(c)      Labor organization practices.  It shall be an unlawful employment practice for a labor organization—

(1)      to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

(2)      to limit, segregate, or classify its membership or applicants for membership, or to classify or fail to refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

(3)    to cause or attempt to cause an employer to discriminate against an individual in violation of this section

90.    Plaintiff Devenport was a pregnant employee of Defendants within the meaning of employee as defined under 42 U.S.C.A. §2000e(f).

91.    Defendants were employers under 42 U.S.C.A. §2000e(b) which defines an "employer" to include a person engaged in an industry affecting commerce who has 15 or more employees for at least 20 calendar weeks in the current or preceding calendar year.

92.    Defendants were aware that Plaintiff was pregnant.

93.    Defendants discriminated against Plaintiff Devenport because of her pregnancy as detailed above and throughout the Complaint.

94.    Defendant knew about the pregnancy discrimination and knew that it was terminating Plaintiff Devenport on the basis of her pregnancy.  Defendants did nothing to stop the discrimination against Plaintiff.

95.    There was no legitimate non-discriminatory basis for the termination of Plaintiff.

96.    Plaintiff suffered severe damages as a direct and proximate cause of Defendant's violations as alleged herein.

97.    All of Defendant's actions were willful, wanton and done in utter disregard for Plaintiff.

98.    By reason of the foregoing, Defendants deprived Plaintiff of certain benefits, privileges and terms and conditions of employment and denied her employment because of her sex and pregnancy, to her damage and injury.

99.    As a result of said damages, the Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to lost wages, pursuant to 42 U.S.C.A. § 2000e-5(g).

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

1.    Damages sufficient to compensate Plaintiff for her injuries;

2.    Reinstatement or Front Pay;

3.    Back Pay, inclusive of lost wages, pension benefits, health insurance benefits and other such fringe benefits;

4.    Pre-judgment and post-judgment interest;

5.    Reasonable attorneys' fees;

6.    Cost of this action;

7.    Punitive damages; and

8.    Any and all such other relief as this Honorable Court may deem just and equitable.

## THIRD CLAIM FOR RELIEF
## VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT
### *Retaliation In Violation of FMLA*

100.    Plaintiff re-alleges and incorporates all paragraphs of this complaint as if fully set forth herein.

101.    Plaintiff applied for and was granted FMLA leave to give birth to her child; which is a provision of FMLA expressly covered under this Federal Law. Alternatively, pregnancy is a

serious medical condition, that requires medical treatment and a medically mandated period of recovery for which FMLA leave should be allowed.

102.   Plaintiff was an eligible employee under the FMLA, insomuch as he had been employed for at least 12 months and had worked at least 1,250 hours for Defendants within the 12-month period immediately preceding his request for FMLA leave and retaliatory termination by Defendant.  See 29 U.S.C. §2611 (2).

103.   Defendant is a covered employer under the FMLA, insomuch as it is engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding year.  29 U.S.C. § 2611(4).

104.   Plaintiff was entitled to leave under FMLA, *see 29 U.S.C. § 2612 (a)(1)*.

105.   Plaintiff properly notified Defendants of her need to take FMLA leave, obtained the necessary medical certifications, insisted on exercising her right to take FMLA, and otherwise fulfilled all of her obligations for taking medical leave.

106.   Plaintiff fully informed Defendants of the nature and scope of her serious medical condition and she went through all of the proper avenues to get approval for her requested leave to recover from the injury.

107.   Plaintiff was entitled to twelve (12) weeks of leave as provided pursuant to the FMLA, because she was a qualifying employee, as alleged above, and she had not taken any other FMLA leave.

108.   Defendants violated the FMLA by transferring/demoting Plaintiff upon the very day of her return from FMLA, by suspending the Plaintiff within weeks of the Plaintiff's return

from FMLA leave, and terminating Plaintiff from her employment within weeks of her return from FMLA leave.

109.    Defendant terminated Plaintiff in retaliation for Plaintiff having taken time off as allowed under FMLA.

110.    There was no legitimate non-discriminatory or non-retaliatory basis for Defendant's termination of Plaintiff.

111.    Defendant's violations were knowing, willful, malicious, and with reckless disregard for the effect on Plaintiff.

112.    Defendant's actions were willful and deliberate and therefore allow the Plaintiff to bring this action within three (3) years of the adverse action of the Defendant in accordance with the provisions of the FMLA.

113.    Because the Defendant actions were deliberate and willful, the statute of limitation on this action is three years from the date of the demotion, suspension and termination.

114.    There exists a causal link between Plaintiff availing herself of FMLA rights and the subsequent harassment, retaliation, termination and or ouster from employment suffered by Plaintiff.

115.    Said discriminatory, unlawful and willful conduct is in direct violation of FMLA 29 U.S.C. § 2615(a)(2).

### FOURTH CLAIM FOR RELIEF
### VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT
*Interference with Plaintiff's Substantive Rights Under FMLA*

116.   Plaintiff re-alleges and incorporates all paragraphs of this complaint as if fully set forth herein.

117.   Plaintiff was employed by Defendants.

118.   Plaintiff's had worked for Defendants more than 1250 hours within the twelve month period preceding their requests for FMLA leave..

119.   Defendants employ more than 50 employees.

120.   Plaintiff provided notice to Defendants regarding a need for FMLA leave so as to obtain medical care for himself.

121.   Defendants intentionally interfered and burdened Plaintiff  in the exercise of his substantive statutory rights as an eligible employee under 29 U.S.C. § 2615(a)(1). Specifically, but not limited to the following conduct.

a)    By failing to comply with FMLA requirements;

b)    Monetarily punishing the Plaintiff for taking FMLA leave by reassigning the Plaintiff's work.

c)    Threatening Plaintiff with discipline while on FMLA leave;

d)    Threatening Plaintiff with termination while on FMLA leave;

e)    Disciplining Plaintiff while on FMLA leave;

f)    Harassing Plaintiff while on FMLA leave;

g)    Terminating Plaintiff while on FMLA leave

h)    demoting the Plaintiff upon return from FMLA;

i)    suspending the Plaintiff upon return from FMLA;

j)    terminating the Plaintiff upon return from FMLA.

122. Plaintiff was entitled to FMLA leave and Defendants unlawfully, intentionally and willfully, interfered with and burdened Plaintiff's exercise of said entitlement.

123. Defendant's actions were willful and deliberate and therefore allow the Plaintiff to bring this action within three (3) years of the adverse action of the Defendant in accordance with the provisions of the FMLA.

124. There exists a causal link between Plaintiff availing herself of FMLA rights and the subsequent harassment, retaliation, termination and or ouster from employment suffered by Plaintiff.

125. Said discriminatory, unlawful and willful conduct is in direct violation of FMLA 29 U.S.C. § 2615(a)(2).

126. As a result of Defendants discriminatory actions Plaintiffs have suffered harm and injury damage to their good reputation, extreme mental anguish, painful embarrassment among

his friends and co-workers, disruption of their personal life, financial injury, physical

harm, lost benefits, lost wages and the loss of enjoyment of the ordinary pleasures of

everyday life.

## FIFTH CLAIM FOR RELIEF
### RETALIATION: TERMINATION FOR UTILIZING FMLA PROTECTED LEAVE

127. Plaintiff realleges and incorporates by reference all the paragraphs in this complaint, as if fully set forth herein

128.   The allegations more particularly described in all the paragraphs in this complaint constitute intentional adverse action against Plaintiff in response to her utilization of medical leave for her own health condition.  Defendant's termination of Plaintiff 's employment was in retaliation for exercising his FMLA rights, in violation of the FMLA.  29 U.S.C. § 2615(a)(2).

## PRAYERS FOR RELIEF FOR ALL FMLA CLAIMS AND SPECIFICALLY THIRD, FOURTH AND FIFTH CLAIMS

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

A.   Statutory damages for lost wages, benefits and other compensation, plus all accrued interest on such sum at the statutory rate, pursuant to 29 U.S.C.A. § 2617 (a)(1)(A)(i) and (ii);

B.   Monetary damages to compensate Plaintiff for all future lost salary and benefits;

C.   Additional liquidated damages equal in the amount of the above requested amounts in Prayers A and B , pursuant to 29 U.S.C.A. § 2617 (a)(1)(B) and/or 29 U.S.C. § 2617(a)(1)(A)(iii);

D.   Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to 29 U.S.C.A. § 2617 (a)(1)(B);

E.   Judgment declaring that the actions of the defendant described herein have violated the plaintiff's rights under 29 U.S.C. §§ 2614(a)(1), 2614(a)(2), and 2615(a);

F.   Judgment against the defendant awarding plaintiff's costs, disbursements,

prejudgment interest lost and/or incurred by reason of the violation.

G.     Judgment against defendant, awarding damages for any wages, salary, employment benefits and other compensation;

H.     Injunctive and declaratory relief with regard to Defendant's unlawful FMLA policies and to force Defendants to cease in enforcing said policies against the hundreds of other persons employed by them.

I.     Damages which satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and this Court deem just under the circumstances;

J.     Attorneys fees, interest on said attorney's fees, expert witness fees; and

K.     Any and all other such relief as this Court deems just and equitable.

## S I X T H   C L A I M   F O R   R E L I E F

### Breach of Written and/or Oral Contract

129.   Plaintiff realleges and incorporates by reference all paragraphs of this complaint, as if fully set forth herein.

130.   Plaintiff and Defendants entered into oral and/or written employment contracts.

131.   Defendants, under those contracts, agreed to and affirmed that the Plaintiff's leave would be extended by use of the Plaintiff's accrued vacation and/or sick leave and/or FMLA leave.

132.   This extension of leave was to allow for care of the Plaintiff's sick mother in the state of Ohio and/or the Plaintiff and her newborn child.

133.   After the Plaintiff and Defendant reached a mutual agreement regarding this extension of leave, the Defendant reneged on the promise, revoking the promises the Plaintiff reasonably relied upon and demanded her immediate return to work.

134.   Plaintiff complied with the Defendant's request, however as a result of the Plaintiff having relied upon the Defendant's promise, the Plaintiff was demoted and transferred, thereby breaching the contract.

135.   Plaintiff provided consideration in the form of her employment and labors to the Defendants and the Defendants provided some, but not all, of the promised compensation, in mutual consideration of the above-described contract.

136.   Defendants, by granting then revoking extension of the FMLA leave, or company leave, thereby breached the contracts with Plaintiff.

137.   Because of the breach of contract the Plaintiff suffered and continues to suffer losses and damages due to the actions of the Defendants.

WHEREFORE, Plaintiff  prays for the following relief:

A.    Unpaid wages and liquidated damages pursuant to the parties oral and/or written contract;

B.    Compensatory damages;

C.    Consequential damages;

D.    Attorneys' fees and costs of this action; and

E.    Such other relief as this Court shall deem just and proper.

## SEVENTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

138.   Plaintiff incorporates and realleges all preceding paragraphs as if fully set forth herein.

139.   Defendant's conduct, as alleged herein, was both extreme and outrageous to the point that it went beyond the bounds of decency and is to be regarded as intolerable in our society.

140.   Defendants, among other things, required Plaintiff to be subjected to egregious actions such as:

  a.   Inducing her to abandon the Plaintiff's mother while she was gravely sick.

  b.   Demoting her upon her return from FMLA leave, thereby showing all her peers and Defendant employees that she was subject to this demotion.

  c.   Engaging in a witch hunt to gather evidence against the Plaintiff;

  d.   Interrogating the Plaintiff for hours during the "interview" by Sam's employees;

141.   Defendants knew that Plaintiff was a new mother that depended upon her employment with Defendant and income to care for and support her young children.

142.   Defendants knew or should have known that the egregious harassment (as detailed above) would cause Plaintiff, and any reasonable individual, to suffer severe emotional distress.

143.   As a direct and proximate result of the previously stated acts, Plaintiff has in the past and will in the future suffer loss of employment, income, benefits and other incidentals of

employment, severe mental and emotional harm and distress, embarrassment and humiliation, physical harm and other costs.

144. Defendant's actions were extreme and outrageous, intentional, willful and wanton, and done with reckless disregard for Plaintiffs rights and to her physical well being, so as to justify awarding punitive damages and exemplary damages in this case.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants in an amount that will fully compensate her for injuries and damages of the past and future, including but not limited to lost wages of the past and future, lost future earnings, lost employee benefits, severe mental and emotional distress, embarrassment and humiliation, attorney fees and costs, punitive damages, liquidated damages and prejudgment interest, as well as any other further relief as the Court deems just and appropriate.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

i.    Acceptance of jurisdiction of this cause;

ii.   Declaratory judgment that the employment practices challenged herein are illegal and violative of the rights secured to Plaintiff;

iii.  A preliminary and permanent injunction against the Defendants,    officers,    owners, agents, successors, employees, representatives and any and all persons acting in concert with it, from engaging in any further unlawful practices, policies, customs, usages, and racial discrimination as set forth herein;

iv.   Damages sufficient to compensate Plaintiff for her injuries;

v.    Reinstatement in position from which she was demoted

vi.   Front Pay;

vii.   Back Pay, inclusive of lost wages and any benefits;

viii.   Lost Future Earnings;

ix.    Pre-judgment and post-judgment interest;

x.     Reasonable attorney's fees pursuant of 42 U.S.C. 1988 and other statutory provisions;

xi.    An award of litigation costs and expenses;

xii.   Any and all other relief that this Honorable Court may deem just and equitable.

**<u>JURY DEMAND</u>**
**<u>TRIAL DEMANDED ON ALL COUNTS SO TRIABLE</u>**

Respectfully Submitted,

By: _____

John C. Ireland
The Law Office Of John C. Ireland
1921 Charles Lane
Aurora, Illinois
60505
630-464-9675
Facsimile 630-206-0889
attorneyireland@aol.com

# 628137