IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRISHA HOWELL DEVENPORT,  )
                          )
          Plaintiff,      )   No. 08 C 871
                          )
     v.                   )   Magistrate Judge Arlander Keys
                          )
SAM'S CLUB WEST and/or SAM'S )
CLUB,                     )
                          )
          Defendant.      )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Trisha Howell Devenport began working for Sam's Club in June, 1986, when she was 19 years old. She started as a part-time cashier, but was consistently promoted until she held the position of General Manager. On October 25, 2004, with the impending birth of her second child, Ms. Devenport completed and returned a Family and Medical Leave of Absence Approval form, indicating a leave return date of February 15, 2005. She began her FMLA leave on November 12, 2004, and returned to work on February 12, 2005. That same day, she was demoted and transferred to a different department, and her pay and benefits were reduced from her pre-leave levels. Thereafter, on April 2, 2005, she was suspended, after being accused (falsely, she claims) of submitting credit applications for employees without the employees' authorization. Sam's Club fired Ms. Devenport on April 8, 2005, and, on February 10, 2008, she sued, alleging sex

and pregnancy discrimination in violation of Title VII, violation of the Family Medical Leave Act, breach of contract and intentional infliction of emotional distress. The parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to this Court on June 30, 2008.

The case is currently before the Court on two discovery related motions filed by Sam's Club. The first is a motion to strike two affidavits prepared and submitted by counsel for Ms. Devenport, and the second is a motion seeking a protective order and sanctions, arising out of counsel's communications with a then current Sam's Club employee. The Court considers each motion in turn below.

The Motion to Strike

In its first motion, Sam's Club asks the Court to strike two affidavits prepared and submitted by counsel for Ms. Devenport, John Ireland; one signed by Juan Anzar, a former Field Investigator with Sam's Club, and one signed by David Pitts, a former General Manager with Sam's Club. Mr. Ireland produced Mr. Anzar's affidavit to Sam's Club on July 21, 2001, just 10 days before discovery closed. Along with the affidavit, he served supplemental interrogatory answers revealing, for the first time, that he "had a discussion with Juan Anzar telephonically on 5/29/2009 and had electronic communications thereafter; he produced copies of email communications along with the affidavit.

Two days later, on July 23, 2009 - now just 8 days before the discovery deadline - Mr. Ireland served Sam's Club with another affidavit, signed by David Pitts; at the same time, he provided copies of email communications evidencing back-and-forth conversations between Mr. Ireland and Mr. Pitts.

Sam's Club seeks to strike both of these affidavits under Federal Rule of Civil Procedure 37©, which provides:

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the witness is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> © may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Sam's Club argues that the Anzar and Pitts affidavits should be stricken because Mr. Ireland produced them at the eleventh hour, just days before discovery was set to close; because he failed to supplement his Rule 26(a)(1) disclosures to include contact information for these witnesses, as required by Rule 26(e)(1)(A); and because he failed to seasonably supplement his discovery responses to reflect his contacts with these witnesses.

To be sure, this was not the first time Sam's Club had seen Mr. Anzar's name in Ms. Devenport's discovery submissions. In

3

her initial Rule 26(a)(1) disclosures, Ms. Devenport identified Mr. Anzar as a person "likely to have discoverable information that [she] may use to support [her] claims or defenses"; she stated as part of that identification that Mr. Anzar's address and phone number were "unknown" to her. Nor was it the first time Sam's Club had seen Mr. Pitts' name in discovery responses; Ms. Devenport identified David Pitts as part of a group of people whose addresses and phone numbers were "unknown" to her. According to her disclosures, Mr. Pitts (along with the five other people listed in that particular paragraph) had "direct knowledge of Plaintiff's employment with Defendant, her duties and responsibilities as an employee; he (along with the others) had "direct knowledge of the Plaintiff's allegations of discrimination, retaliation and demotion and all other facts and circumstances underlying the complaint and had "direct knowledge regarding the employment policies and procedures of the Defendant, their application to the Plaintiff and other employees."

Yet, discovery proceeded in this case, almost entirely, without any further mention of these witnesses. In its first set of interrogatories, Sam's Club asked Ms. Devenport to identify "all persons including any employees or former employees of the Defendant having knowledge relevant to Plaintiff['s] claims." And she never mentioned Mr. Anzar or Mr. Pitts. Similarly, she

was asked to "identify each person she or her counsel had interviewed, communicated with or contacted regarding this action," and, again, she never mentioned Mr. Anzar or Mr. Pitts.

At some point, however, the statements in her Rule 26(a) disclosures and her interrogatory responses became misleading, incomplete and downright untrue. At some point, Mr. Ireland did learn the addresses and phone numbers for Mr. Anzar and Mr. Pitts, and, at some point, he did interview them about the case. It is clear that counsel was communicating with Mr. Anzar since at least May 29, 2009. Yet Mr. Ireland did not supplement his discovery responses or otherwise disclose these communications for almost two months. And he never even bothered to supplement his responses to include the information concerning Mr. Pitts; he simply produced the affidavit at the last minute.

Counsel for Ms. Devenport now represents that he did not contact Mr. Pitts until after the deposition of Larry Dodson, which occurred on June 24, 2009, and that he sent him an initial draft of an affidavit on July 2, 2009. This is corroborated by the attachments: it appears that Mr. Ireland did, in fact, send an email to Mr. Pitts on July 2, 2009, and that email begins: "[t]hank you for talking with us earlier this week." Yet he remained silent for another three weeks, with the discovery cutoff date looming large. That is not "timely."

And it gets worse. At a hearing on July 15, 2009, just two

5

weeks before the discovery deadline, the parties discussed the status of their efforts. After being reminded by the Court that discovery was set to close on July 31, 2009, the parties advised the Court that they had just one deposition remaining - that of Colleen Vukovich - and that they were hopeful that it could be completed by the scheduled cutoff date. Mr. Ireland represented that, with respect to that witness, "[t]he only extension we might have is the witness in that case has a family member who is in critical condition and therefore we may ask leave to take that one dep beyond the discovery date if the person were to expire." In light of that representation, the Court granted the parties leave to "take a deposition after that as long as you guys agree." Neither party mentioned any other witnesses, and everyone present seemed to be on the same page concerning discovery; certainly, it was the Court's impression after that hearing that discovery was complete, but for that one deposition, which would be completed by the 31st or, by agreement of the parties, shortly thereafter.

That understanding is consistent with an email exchange the parties had about a month before that July 15th status. Counsel for Sam's Club, Norma Zeitler sent an email to Mr. Ireland concerning depositions and asking who else he planned to depose. Mr. Ireland responded "I think its just wayne, finish Mr. Dodson and we are done"; he reiterated that, at that time (June 19), he

6

had no intention of deposing Mr. Anzar or Mr. Wagoner; he stated that "I might want to revisit, but unlikely."

Although he was obviously communicating with Mr. Anzar at the time, Mr. Ireland never mentioned those communications – beyond that, he took affirmative steps to lead the Court and counsel for Sam's Club to believe that he was not pursuing discovery from Mr. Anzar. Imagine counsel's surprise then, when Sam's Club received the affidavits on July 21 and 23, along with the responses showing that he had been corresponding with Mr. Anzar for months.

Given the timing of these disclosures, and his failure to even mention these witnesses at the July 15th status hearing, it seems likely that Mr. Ireland was either woefully unprepared and derelict in pursuing his discovery plan, or that he was intentionally trying to sandbag Sam's Club with these witnesses. Either way, his conduct is unacceptable.

Having determined that Mr. Ireland's conduct violated both the letter and the spirit of the discovery rules and orders, the Court must considered whether he should, therefore, be sanctioned and, if so, what sanction is appropriate. Exclusion of evidence not disclosed "is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998); see also Rule 37(c)(1). Mr.

Ireland argues that his deficiencies during discovery were inadvertent and that they caused no harm to Sam's Club.

Despite Mr. Ireland's last minute notification to Sam's Club that he intended to rely upon the testimony of Mr. Anzar, Sam's Club was, in fact, able to depose him on July 24th. And, although counsel for Sam's Club may not have had as much time as they might have liked to prepare for the deposition, they have not explained how things might have been different if they had had more time to prepare; counsel has not explained how, if at all, that lack of preparation time may have prejudiced Sam's Club position. Putting aside the harm caused any time a party fails to comply with discovery rules and orders, the Court is persuaded that the discovery violations with respect to Mr. Anzar were harmless, and the Court will not strike his affidavit. Sam's Club is free to address in its dispositive motion, if any, or at trial any inconsistencies between Mr. Anzar's affidavit and his deposition testimony.

Sam's Club was not, however, able to depose Mr. Pitts. And, with discovery now closed, it has no way of testing his credibility or otherwise exploring the assertions and statements made in the affidavit Mr. Ireland prepared for him. Thus, in a very real sense, Mr. Ireland's conduct has harmed Sam's Club, and the Court will, therefore strike Mr. Pitts' affidavit.

Finally on this issue, the Court notes that the use of

affidavits at this juncture is not something that is typically seen. The Federal Rules of Civil Procedure contemplate that the parties will use as methods of discovery, depositions (whether upon oral examination or written questions), interrogatories, requests to produce, and requests for admission. There is no provision in the discovery rules for the submission of affidavits, unless and until the case proceeds to the summary judgment stage. Thus, Mr. Ireland's decision to prepare and submit affidavits from his witnesses is curious. Indeed, using affidavits in this manner undermines the goals of the discovery process; the point of disclosing witnesses is to give the other side an opportunity to explore their knowledge and their credibility; the submission of an affidavit thwarts that, and it is only because Sam's Club was able to depose Mr. Anzar that the Court is not striking his affidavit.

Defendant's Motion for Protective Order and for Sanctions

In addition to the motion to strike the Anzar and Pitts affidavits, Sam's Club has moved for a protective order and for sanctions, based upon Mr. Ireland's communications with Bradley Kollar. On July 28, 2009 - within a week of disclosing his contacts with Mr. Anzar and Mr. Pitts - Mr. Ireland again supplemented his discovery responses, for the first time, advising Sam's Club that he had communicated with Mr. Kollar, who, Sam's Club learned upon investigation, was then employed as

an Assistant Manager for Sam's Club at a store in Evanston. According to the responses, Mr. Ireland had telephone conversations with Mr. Kollar on July 21 and July 22, yet he did not mention those contacts in his previous set of supplemental responses; nor did he mention Mr. Kollar when he disclosed his communications with Mr. Pitts. Rather, he remained silent for an additional week, despite the fact that he knew Mr. Kollar was a current Sam's Club employee.

Sam's Club argues that such contacts violate Rule 4.2 of the Illinois Rules of Professional Conduct, as well as its counterpart in this district, Rule 83.54.2 of the Northern District of Illinois' Rules of Professional Conduct. The Rule provides that,

> [d]uring the course of representing a client a lawyer shall not communicate . . . on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter unless the first lawyer has obtained the prior consent of the lawyer representing such other party or as may otherwise be authorized by law." "In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization . . . .

Mr. Ireland argues that Sam's Club failed to prove or provide direct evidence of Mr. Kollar's job description. But, tellingly, Mr. Ireland does not argue that Mr. Kollar was not a manager; nor does he argue that Mr. Kollar's duties were not "managerial." In short, Mr. Ireland should have known better. And though he

characterizes his violation of Rule 4.2 as being "a slight infraction," a clear pattern is emerging with respect to Mr. Ireland's practice – a pattern that reflects poorly on his professionalism and competence.

Having said that, the parties agree that, at some point, Mr. Kollar left Sam's Club's employ; he became, in other words, a former employee. And former employees are not covered under the Rule. *See, e.g., Orlowski v. Dominick's Finer Foods, Inc.*, 937 F.Supp. 723, 728 (N.D. Ill. 1996). Thus, although Mr. Ireland clearly violated the rule by contacting Mr. Kollar initially, it is not clear that all of his contacts would have done so. And, frankly if this had been the only time Mr. Ireland crossed the line in discovery, the Court would likely not be inclined to sanction him. But, as explained above, this was not the first time. Mr. Ireland's *ex parte* communications with a current managerial employee of the defendant were improper and inappropriate, and Mr. Kollar's affidavit is stricken.

### Conclusion

For the reasons explained above, Sam's Club's motion to strike is denied with respect to the affidavit of Juan Anzar, but granted with respect to the affidavit of David Pitts. Additionally, Sam's Club's motion for a protective order and for sanctions is granted in part and denied in part. The affidavit of Bradley Kollar is stricken. But, especially now that

11

discovery is closed, the Court sees no need to enter a protective order that would really just require counsel to comply with his obligations under the Rules of Professional Conduct.

Dated: November 5, 2009

ENTER:

*[signature]*
ARLANDER KEYS
United States Magistrate Judge